**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RICHARD JOHNSON, on behalf of himself and all others similarly situated,

Plaintiff,

v.

SOAPOLOGY NYC LLC,

Defendant,

**Case No. ____________**

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, RICHARD JOHNSON ("Plaintiff" or "Mr. Johnson"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, Robert Schonfeld, Esq, of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, SOAPOLOGY NYC LLC ("Soapology" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to ensure that its ecommerce Website, www.soapologynyc.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff is a visually-impaired and legally blind individual who requires screen-reading software to access website content. **See Exhibit A** — Richard Johnson, Low Vision Evaluation Report (dated September 10, 2024). Plaintiff uses the terms "blind" or "visually-impaired" because his central visual acuity with correction is less than or equal to 20/200. Mr. Johnson suffers from proliferative diabetic retinopathy (PDR), a severe stage of diabetic eye disease that causes rapid and permanent loss of vision. He has been formally certified as legally blind by the New York State Commission for the Blind.

2. Defendant, SOAPOLOGY NYC LLC operates a consumer-facing retail business

through its interactive e-commerce Website, www.soapologynyc.com (the "Website" or "Defendant's Website"). Defendant offers a wide range of artisanal soaps, bath products, body scrubs, shower gels, candles, skincare products, and bath accessories, with product listings, descriptions, and online purchasing features. Defendant maintains physical retail locations in New York City but its Website functions as a primary channel for consumer engagement and sales.

3. Plaintiff, Richard Johnson, visited www.soapologynyc.com to browse and purchase natural bath and skincare products, including a Lavender Vanilla Shower Gel and a Dead Sea Salt Scrub — Lavender Vanilla Small. Plaintiff sought to use the Website's product listings, shopping cart, and checkout features to independently complete purchases. However, persistent accessibility barriers — including non-descriptive alternative text, empty headings, broken ARIA roles, inaccessible form controls, and low-contrast elements documented in SortSite audits (Exhibits B, C, and D) — prevented him from navigating or transacting on the Website without assistance. He remains eager to return once the Website is remediated, as Soapology's proprietary natural formulations are uniquely suited to his medical and personal care needs and are unavailable through other retailers.

4. Plaintiff brings this civil action against Defendant for its failure to design, construct, maintain, and operate the Website to be fully accessible to and independently usable by blind and visually-impaired individuals. Defendant's denial of full and equal access to www.soapologynyc.com, and therefore its denial of the goods and services offered thereby — including retail transactions — is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5. Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in

the United States are visually impaired,[1] including 2.0 million who are blind. According to a 2016 report published by the National Federation of the Blind, approximately 418,500 visually impaired persons live in the State of New York.[2]

6. Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, both New York State and New York City law require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

7. Defendant's Website is not equally accessible to blind and visually impaired consumers; therefore, Defendant violates the ADA. Plaintiff seeks a permanent injunction requiring Defendant to adopt, implement, and maintain accessible web design practices consistent with WCAG 2.1 AA, including: appointing a qualified accessibility coordinator; conducting periodic audits and user testing with blind users; remediating code issues (e.g., alternative text, ARIA associations, heading hierarchy, focus order, and color contrast); ensuring third-party integrations are accessible; publishing an accessibility statement and feedback channel; training relevant personnel; and instituting ongoing monitoring so that www.soapologynyc.com becomes and remains fully accessible and independently usable by blind and visually impaired consumers.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331

[1] *See* United States Census Bureau Report.
[2] *See* 2016 National Federation for the Blind Report.

and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 *et seq*.)("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*., ("NYCHRL") & § 296 *et seq*.; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

10. Venue is proper in this District under 28 U.S.C. §1391(b) and (c), in that Defendant conducts and continues to conduct a substantial and significant amount of business in this District, via the Internet and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on several occasions, the subject Website within his home located in Bronx County, New York, located within this judicial District.

11. Defendant, Soapology NYC LLC, is a Domestic Limited Liability Company organized under the laws of New York (DOS ID: 4640883, filed September 23, 2014) with its service of process address at 67 8th Avenue, New York, NY 10014. Defendant is subject to personal jurisdiction in this District because it purposefully targets and solicits business from New York State residents through its highly interactive Website, www.soapologynyc.com, and through its physical retail locations in New York City.

12. Defendant has been and is committing the acts or omissions alleged herein in the Southern District of New York, and in so doing, violated the rights the ADA prescribes to Plaintiff and to other blind and other visually impaired consumers, causing them to suffer injury. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District on several separate occasions.

13. Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's Website in Bronx County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past and now deter Plaintiff regularly from accessing Defendant's Website, www.soapologynyc.com in the future. Most courts support the placement of venue in the district in which the Plaintiff tried and failed to access a website.

14. The United States Department of Justice Civil Rights Division has recently stated that, "[t]he Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those provided through websites." Plaintiff is a member of the protected class of individuals under the ADA, 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., and the NYCHRL. Plaintiff is unable to utilize a computer or device without the assistance of screen-reading software, such as Nonvisual Desktop Access ("NVDA"). See, e.g., *Chloe NA v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); see also *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021) (personal jurisdiction can be found as long as the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products).

## NATURE OF ACTION

15. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching,

as well as many other activities for sighted, blind, and visually-impaired persons alike.

16. In today's tech-savvy world, blind and visually impaired people can access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the Internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites and the information, products, goods, and services contained thereon.

17. Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase, and other programs are available without the user having to purchase the program separately, such as the popular screen-reading software program for a Windows computer, Nonvisual Desktop Access "NVDA."

18. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

19. Screen readers have rules and expectations about what the gathered information is and should be and use sophisticated rules to interpret what it has "seen," i.e., gathered with help from the operating system, the app in question, and other ways. Based on information gathered and subsequently interpreted, screen readers use components such as text-to-speech (TTS), braille, and other output mechanisms to present screen content.

20. The international website standards organization, the World Wide Web Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

21. Non-compliant websites pose common access barriers to blind and visually impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a. A text equivalent for every non-text element is not provided;

b. Title frames with text are not provided for identification and navigation;

c. Equivalent text is not provided when using scripts;

d. Forms with the same information and functionality as for sighted persons are not provided;

e. Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f. Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g. If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h. Web pages do not have titles that describe the topic or purpose;

i. The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j. One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k. The default human language of each web page cannot be programmatically determined;

l. When a component receives focus, it may initiate a change in context;

m. Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n. Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o. In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p. Inaccessible Portable Document Format (PDF); and

q. The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

22. Websites have features and content that are modified on a daily, and in some instances, hourly basis, and a one-time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed

on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## STANDING

23. Plaintiff, RICHARD JOHNSON, is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL. For Plaintiff to access the Internet, he must utilize a computer that contains a screen-reader, such as "NVDA for Windows." Plaintiff has been formally certified as legally blind by the New York State Commission for the Blind due to proliferative diabetic retinopathy.

24. Screen reader "software translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.
>
> The screen reading software uses auditory — rather than visual — cues to relay this same information. When a sight-impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the link, says the word "clickable."...Through a

series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

*Id.* at 373. *see also* American Federation for the Blind, Screen Readers, https://www.afb.org/blindness-and-low-vision/using-technology ("Computer Access for People Who Are Blind or Have Low Vision," & "Using Technology") (Last accessed on June 20, 2024; estimating 26.0 million adult Americans reported sight deficiency).

25. Plaintiff attempted to access Defendant's Website, www.soapologynyc.com on February 10, 2026, February 18, 2026, and again on March 5, 2026, from his home in Bronx County, New York. On each occasion, Plaintiff sought to browse and purchase specific natural bath and skincare products, including:

a. Lavender Vanilla Shower Gel — Plaintiff sought this product because, as a person residing in an assisted living facility with limited mobility and severe visual impairment, maintaining personal hygiene independently is paramount to his dignity and self-sufficiency. Plaintiff was drawn to Soapology's lavender-vanilla formulation because lavender-scented products are specifically recommended for relaxation and stress reduction by his care team as part of his mind-body wellness regimen. The gentle, natural formulation would also be appropriate for his sensitive skin, which is a concern related to his diabetic condition; and

b. Dead Sea Salt Scrub — Lavender Vanilla Small — Plaintiff desired this exfoliating scrub because proper skin care is a medical necessity for diabetic patients, who are prone to dry, cracking skin that can lead to infections and serious complications. His care providers at the assisted living facility have recommended regular exfoliation to maintain skin integrity. The Dead Sea salt formulation, combined

with the calming lavender-vanilla scent, was particularly appealing because it combines therapeutic skincare with the aromatherapy benefits his wellness plan emphasizes.

26. Plaintiff specifically sought these items from Soapology NYC because: (a) Soapology is a New York-based company with physical locations in New York City, making it a local business he wished to support and whose products could be potentially picked up by a caregiver or aide if necessary; (b) Soapology specializes in natural, handcrafted bath products — exactly the type of gentle, chemical-free formulations that are safer for individuals managing diabetic skin conditions; (c) Soapology offers curated collections organized by scent family (such as lavender-jasmine), which would have allowed Plaintiff to easily identify and select compatible products through accessible navigation — had the Website been accessible; (d) larger retailers such as Amazon or Bath & Body Works do not carry Soapology's proprietary formulations, making the Website the exclusive online channel to purchase these specific products.

27. Plaintiff's attempted purchases were not discretionary or speculative; they were crucial to his personal care and medical needs. Plaintiff resides in an assisted living facility in Bronx, New York, where maintaining personal hygiene independently is paramount to his dignity and self-sufficiency. As a diabetic patient with severe visual impairment, Plaintiff requires gentle, natural skincare products to maintain skin integrity and prevent complications associated with his condition. His care providers have specifically recommended regular exfoliation and the use of gentle cleansing products as part of his medical care regimen.

28. For a blind individual residing in an assisted living facility, the inability to independently purchase personal care products online is not merely inconvenient — it is a deprivation of autonomy. Without accessible e-commerce options, Plaintiff must rely entirely on

caregivers or aides to select and purchase products on his behalf, stripping him of the dignity of independent consumer choice. The acquisition of Soapology's natural bath products was essential to Plaintiff's personal care routine and medical wellness plan. Plaintiff's intent to purchase these products was rooted in medical necessity, not convenience, and his inability to complete transactions on Defendant's Website directly deprived him of the opportunity to secure products recommended by his care team.

29. However, despite repeated efforts, Plaintiff was unable to navigate key portions of the Website, including product detail pages, shopping cart, and checkout forms. Plaintiff personally encountered barriers that were later corroborated by accessibility audits:

a. On February 10, 2026, Plaintiff visited www.soapologynyc.com for the first time, seeking to browse the lavender-jasmine collection. Using NVDA, he attempted to navigate the product pages but encountered numerous barriers. Product images were announced only as "United States" — meaningless alternative text that provided no product information — preventing Plaintiff from identifying the Lavender Vanilla Shower Gel. The SortSite accessibility audit (Exhibit B) confirmed that 219 pages contained decorative and product images with non-descriptive ALT text "United States" in violation of WCAG 2.1 A, F39.

b. On February 18, 2026, Plaintiff returned to the Website to attempt to purchase the Dead Sea Salt Scrub. He navigated to the product page, but NVDA could not read the form controls because HTML form controls had no accessible names (1,235 pages affected per SortSite audit, WCAG 2.1 A, F68). When he attempted to add the item to his cart, NVDA announced empty headings and broken list item roles. He could not determine product sizes, prices, or add items to the cart independently.

The SortSite audit confirmed 223 pages had elements with role=list that violated ARIA 1.2 requirements (WCAG 2.1 A 1.3.1).

c. On March 5, 2026, Plaintiff made a third attempt to complete his purchase. He tried to navigate to the checkout but links throughout the Website lacked accessible names (72 pages, WCAG 2.1 A, F89), and link color changes were the only indicator of links — invisible to screen readers and color-blind users (137 pages, WCAG 2.1 A, F73). NVDA repeatedly failed to announce link destinations, trapping Plaintiff in navigation loops. Empty headings on 95 pages (WCAG 2.1 A, 1.3.1) caused NVDA to skip over critical section markers. Plaintiff abandoned his purchase attempt in frustration.

30. These barriers, corroborated by objective audit tools, obstructed Plaintiff's ability to complete purchases and engage with the Website independently. He was forced to abandon his attempts to buy personal care products despite his clear intent and ability to pay.

31. Plaintiff's experience was not merely inconvenient — it was dehumanizing. Each attempt to browse Soapology's catalog ended in frustration. For example, when trying to identify the Lavender Vanilla Shower Gel, NVDA announced every product image only as "United States," rendering the product pages meaningless. When attempting to add the Dead Sea Salt Scrub to his cart, NVDA encountered form controls without accessible names, making it impossible to select product sizes or quantities. The SortSite audit confirmed these defects across 1,235 pages.

32. Plaintiff felt the sting of exclusion not only as a consumer but as a person seeking to maintain his independence and dignity. He had identified specific products recommended by his care team and attempted to complete purchases through the Website. Instead, he was met with inaccessible forms, broken navigation, and meaningless alternative text, forcing him to abandon

the process. The denial of access reinforced a systemic message: that blind users are not welcome. Plaintiff also wished to purchase gift items from Soapology for family members and facility staff who have assisted in his care and was prevented from doing so by the same accessibility barriers.

33. Plaintiff intends to return to www.soapologynyc.com within the next 30 days to complete his purchases once the Website is remediated, and again in late Spring 2026 to shop seasonal and gift collections. His intent is not speculative — it is rooted in ongoing medical necessity and personal preference. Soapology's Website is uniquely positioned to meet his needs because it offers proprietary natural bath products unavailable elsewhere, direct-to-consumer pricing, and curated scent-based collections that would — if made accessible — enable efficient product selection. Additionally, Plaintiff wishes to purchase gift items from Soapology for family members and facility staff who have assisted in his care, and intends to browse the gift sets and holiday collections when they become available.

34. Defendant has previously faced ADA website accessibility litigation — *Fishler v. Soapology NYC LLC*, Case 1:20-cv-09372-LJL (S.D.N.Y., filed November 9, 2020) — in which Plaintiff Brian Fischler, a legally blind individual, brought identical ADA, NYSHRL, and NYCHRL claims for website inaccessibility. Despite this prior litigation, Defendant failed to remediate its Website. The recurrence of barriers and lack of meaningful updates demonstrates a pattern of neglect and noncompliance.

35. Plaintiff's experience is not hypothetical or speculative. He has encountered specific, documented barriers and has a credible intent to return, satisfying the standing requirements articulated in *Calcano v. Swarovski North America Ltd.,* 36 F.4th 68 (2d Cir. 2022), and *Riley v. Baggu Corp.,* 2025 U.S. Dist. LEXIS 150080 (SDNY August 5, 2025).

36. On March 30, 2026, Plaintiff's counsel conducted additional accessibility audits of

www.soapologynyc.com using Power Mapper's SortSite program. These scans **(attached hereto as Exhibits B, C, and D)** corroborated Plaintiff's experiences and revealed systemic accessibility failures across 2,805 pages checked, including 1,312 pages with accessibility problems (47% worse than average), 1,314 pages with quality issues (47% worse than average), 1,312 pages with broken links or errors (47% worse than average), and 1,313 pages with W3C standards issues (47% worse than average). The SortSite audit identified 12 Level A accessibility issues across 1,310 pages, including:

a. 219 pages: Decorative and product images use non-descriptive ALT text "United States" (WCAG 2.1 A F39, Section 508 A F39);

b. 223 pages: Elements with role=list must contain or own elements with role=listitem, violating ARIA 1.2 (WCAG 2.1 A 1.3.1);

c. 95 pages: Empty headings (WCAG 2.1 A 1.3.1);

d. 1,235 pages: HTML form controls have no accessible name (WCAG 2.1 A F68, Section 508 A F68);

e. 137 pages: Links indicated only by text color change, invisible to color-blind users (WCAG 2.1 A F73);

f. 2 pages: Spaces inserted between letters preventing screen reader pronunciation (WCAG 2.1 A F32, 1.3.2);

g. 72 pages: Links with no accessible name (WCAG 2.1 A F89, 2.4.4, 2.4.9, 4.1.2); and

h. 1,235 pages: WCAG form control has no accessible name issues on product pages, contact page, and throughout the Website.

37. The broken link report (Exhibit D) further revealed 5 broken link issues across 1,312 pages, including a broken Facebook link (https://www.facebook.com/Soapology/) returning

400 Bad Request on every page of the Website, along with numerous broken product links across collections.

38. Because simple compliance with WCAG 2.1 Level AA Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Defendant's failure to remediate constitutes unlawful discrimination under Title III of the ADA, 42 U.S.C. § 12182.

39. Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a. Constructing and maintaining a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

b. Failing to construct and maintain a Website that is sufficiently intuitive to be equally accessible to visually impaired individuals, including Plaintiff; and

c. Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

40. Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating against or perpetuating the discrimination of others, as alleged herein.

41. The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires: "In the case of violations of... this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities... [w]here appropriate, injunctive relief shall also include requiring the... modification of a policy..." 42 U.S.C. § 12188(a)(2).

42. Because Defendant's Website has never been equally accessible, and because

Defendant lacks a corporate policy that is reasonably calculated to cause the Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Website. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

a. Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

b. Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

c. Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies with the WCAG 2.1 guidelines; and

d. Develop an accessibility policy that is disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

43. Although Defendant may currently have centralized policies regarding maintaining and operating the Website, Defendant lacks a plan and policy reasonably calculated to make it fully and equally accessible to, and independently, usable by, blind and other visually-impaired consumers.

44. Upon information and belief, Defendant has invested substantial sums in developing and maintaining the Website and has generated significant revenue from its online platforms. These amounts are far greater than the associated cost of making Defendant's Website equally accessible to visually impaired customers. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website.

## CLASS ACTION ALLEGATIONS

45. Plaintiff, RICHARD JOHNSON, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website, www.soapologynyc.com and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

46. Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York and State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered during the relevant statutory period.

47. Common questions of law and fact exist amongst the Class, including:

a. Whether Defendant's Website is a "public accommodation" under the ADA;

b. Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c. Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, and/or accommodations to people with visual disabilities, violating the ADA; and

d. Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYSHRL.

48. Plaintiff's claims are typical of the Class. The Class, similar to the Plaintiff, are severely visually impaired or otherwise blind, and claims that Defendant has violated the ADA,

NYSHRL, NYCRL, and/or the NYCHRL by failing to update or remove access barriers on the Website so that the website can be independently accessible to the Class.

49. Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief concerning Plaintiff and the Class as a whole.

50. Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

51. Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

52. Moreover, judicial economy will be served by maintaining this lawsuit as a class action for numerosity purposes in that it is likely that the number of patrons who have attempted to utilize the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

## FIRST CAUSE OF ACTION
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

53. Plaintiff, RICHARD JOHNSON, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

54. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

55. Defendant's Website, www.soapologynyc.com that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

56. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

57. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, <u>inter alia</u>:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise

> treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

58. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

59. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION

**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

60. Plaintiff, RICHARD JOHNSON, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee,

proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

62. Defendant is subject to NYCHRL because it owns and operates the Website, www.soapologynyc.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

63. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the site and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

64. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

65. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm **and discrimination to blind class members.**

66. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

67. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

68. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

69. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

70. Plaintiff is also entitled to reasonable attorneys' fees and costs.

71. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

72. Plaintiff, RICHARD JOHNSON, on behalf of himself and the Class and New York

City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

73. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

74. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

75. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.soapologynyc.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

76. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

77. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

78. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

79. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

80. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

81. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

82. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

83. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

84. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

## **FOURTH CAUSE OF ACTION**
**(Violation of New York State Civil Rights)**
**("NYCRL")**

85. Plaintiff, RICHARD JOHNSON, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

86. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41.

87. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

88. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") §

40-c.

89. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

90. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

91. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

92. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

93. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*..

94. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

95. Plaintiff, RICHARD JOHNSON, on behalf of himself and the Class and New York

City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

96. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., and N.Y.C. Admin. Code § 8-107, *et seq*., prohibiting discrimination against the blind.

97. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42

U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: April 2, 2026
New York, New York

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*<u>/s/ Robert L. Schonfeld</u>*
Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889